IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| BALANCED BRIDGE FUNDING LLC, | |
| Plaintiff, | Civil No. 21-20512 (RBK/AMD) |
| v. | **OPINION** |
| MITNICK LAW OFFICE, LLC, *et al.*, | |
| Defendants. | |

**KUGLER**, United States District Judge:

Presently before the Court is Defendants' Motion to Dismiss Counts Two, Four, and Five of the Amended Complaint (ECF No. 21). For the reasons set forth below, Defendants' Motion is **GRANTED in part and DENIED in part**.

**I.  BACKGROUND**

Plaintiff Balanced Bridge Funding LLC ("Plaintiff" or "Balanced") brings this action against Defendants Mitnick Law Office, LLC ("Mitnick Law"), Craig Mitnick, Fern Mitnick, and Carol M. Mitnick (collectively "Defendants") regarding a property, located at 109 N. Clermont Avenue, Margate City, New Jersey, 08402, purchased by Mitnick Law Office in December 2018 for $320,250 ("the Property"). (ECF No. 18, "Am. Compl." ¶¶ 1, 26). Balanced challenges Defendants' purchase, subsequent sale, and encumbrance of the Property.

**A. The Master Agreement & Arbitration Proceedings**

The Court recites only those facts relevant to the resolution of the instant motion. Starting in 2015, Balanced and Mitnick Law entered into a series of funding agreements. (Am. Compl. ¶ 11). In June 2017, Balanced and Mitnick Law entered into a final, cumulative funding agreement

1

("the Master Agreement") whereby "Mitnick Law sold its rights to legal fees it collected in the NFL Concussion Class Action to Plaintiff in exchange for millions of dollars in cash advances. Per the Master Agreement, the advances were to be used for Mitnick Law's business purposes." (*Id.* ¶¶ 11–12). Plaintiff advanced a total of $2.2 million dollars to Mitnick Law, with the last advance occurring in April 2018. (*Id.* ¶ 24). Plaintiff asserts that Mitnick Law then breached the Master Agreement by failing "to pay over to Plaintiff legal fees received from the NFL Concussion Settlement Administrator on Mitnick Law cases and/or from the Locks Law Firm on cases that Mitnick Law referred." (*Id.* ¶ 13). As such, Balanced commenced arbitration proceedings against Mitnick Law, (*id.* ¶ 15), and in September 2021, the arbitrator entered a final award in favor of Balanced, (*id.* ¶ 23). As of February 2022, Balanced has not received any payments in accordance with the Final Award. (*Id.* ¶ 39).

### B. Purchase of the Property

In December 2018, Mitnick Law purchased the Property at issue here for $365,000. (Am. Compl. ¶ 26). Balanced claims the Property was not purchased for a business purpose. (*Id.* ¶ 28). Balanced further alleges that the advances it paid to Mitnick Law and the NFL Concussion Class Action legal fees constitute substantially all of the income that Mitnick Law received in the period leading up to Mitnick Law's purchase of the Property. (*Id.* ¶ 25). Given this, it asserts that "[t]he source of funds for Mitnick Law's purchase of the Property was the advance payments from Plaintiff and/or legal fees from the NFL Concussion litigation." (*Id.* ¶ 27). Thus, Balanced contends that "[b]y operation of the Master Agreement, the funds used by Mitnick Law to purchase the Property belonged to Plaintiff." (*Id.* ¶ 29).

In March 2019, Mitnick Law took out a $260,000 mortgage backed by its security interest in the Property. (Am. Compl. ¶ 30). A few months later, in June 2019, Balanced asked

Craig Mitnick whether he had collected legal fees in the NFL Concussion Class Action. (*Id.* ¶ 31). In August 2019, without responding to this inquiry, Mitnick Law transferred its ownership interest in the Property to Craig and Fern Mitnick for $25,000 via quitclaim deed. (*Id.* ¶¶ 32–33). In September 2019, Craig and Fern Mitnick took out an additional mortgage loan on the Property for $450,000. (*Id.* ¶ 34). In October 2019, Mitnick Law's $260,000 mortgage loan on the Property was discharged. (*Id.* ¶ 35). In May 2020, Craig and Fern Mitnick took out a mortgage on the Property for $365,000 from Carol M. Mitnick, Craig Mitnick's mother. (*Id.* ¶ 38).

On December 15, 2021, Balanced filed the instant action against Defendants. (ECF No. 1, "Compl."). On February 9, 2022, Balanced filed an Amended Complaint, which is now the operative complaint in this matter. *See* (Am. Compl.). On February 23, 2022, Defendants moved to dismiss Counts Two, Four, and Five of the Amended Complaint.[1] (ECF No. 21, "Defs. Mot."). Plaintiff responded opposing Defendants' motion on March 7, 2022, (ECF No. 23, "Pl. Opp'n Br."), to which Defendants replied on March 14, 2022, (ECF No. 24, "Defs. Reply").

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)

---

[1] Defendants consistently misnumber the Counts contained in the Amended Complaint. For clarity, the Court notes that Defendants are asking the Court to dismiss Plaintiff's claims for constructive trust, piercing the corporate veil, and declaratory judgment—Counts Two, Four, and Five of the Amended Complaint respectively. *See* (Defs. Mot.). Defendants are not moving for dismissal of Plaintiff's fraudulent transfer or civil conspiracy claims, (Defs. Mot. at 1), Counts One and Three of the Amended Complaint, (Am. Compl. at 7–9, 10).

3

(quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To make this determination, courts conduct a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the Court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the Court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 680). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (quoting *Iqbal*, 556 U.S. at 678). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## III.   DISCUSSION

### A. Constructive Trust (Count Two)

With regard to Plaintiff's constructive trust claim, Defendants argue that dismissal is warranted because: (1) Plaintiff is not entitled to the quasi-contractual relief of unjust enrichment given the existence of the Master Agreement; (2) Plaintiff cannot show that Mitnick Law committed a "wrongful act" in purchasing the Property in 2018; and (3) a constructive trust is a remedy, not a standalone cause of action. *See* (Defs. Mot. 3–7).

It is well established that "[a] constructive trust is an equitable remedy and not an independent cause of action." *Van Horn, Metz & Co. v. Crisafulli*, No. 21-01128, 2021 WL 4317186, at *5 (D.N.J. Sept. 23, 2021) (citing *Flanigan v. Munson*, 175 N.J. 597 (2003)); *Angera v. Angera*, No. 14-01253, 2014 WL 4988406, at *3 n.5 (D.N.J. Oct. 6, 2014)

4

("Regardless of Plaintiff's pleading, a 'constructive trust' on proceeds and profits is not a cause of action, and he appears to be a seeking a remedy that would include the imposition of a constructive trust."); *Cap. Inv. Funding, LLC v. Lancaster Res., Inc.*, No. 8-4714, 2014 WL 5798121, at *2 (D.N.J. Nov. 6, 2014) ("A constructive trust is an equitable remedy and not a cause of action in and of itself.") Given this, the Court will dismiss Plaintiff's claim for constructive trust (Count Two) with prejudice.[2] *See Chen v. Cline*, No. 12-3051, 2013 WL 776238, at *6 (D.N.J. Feb. 27, 2013) ("Because constructive trust is a remedy and not an independent cause of action, Count Four is dismissed."); *see also Chaleplis v. Karloutsos*, No. 21-1492, --- F. Supp. 3d ----, 2022 WL 95691, at *12 (E.D. Pa. Jan. 10, 2022) (striking a claim for constructive relief in part because Pennsylvania, like New Jersey, does not recognize constructive trust as an independent cause of action); *Stewart v. Feldman*, No. 20-00776, 2020 WL 2193336, at *2 (E.D. Pa. May 6, 2020) ("Plaintiff alleges a cause of action for constructive trust. A constructive trust is an equitable remedy, not an independent cause of action, and the Court dismisses Count IV of the Complaint with prejudice.").

However, the Court stresses that nothing in this opinion should be read to prevent the imposition of a constructive trust *as a remedy* in this case. Pursuant to the New Jersey Uniform Voidable Transactions Act, formerly the Uniform Fraudulent Transfer Act, N.J. Stat. Ann. 25:2-20 *et seq.*, courts "may impose equitable remedies such as constructive trust in connection with fraudulent transfer claims," *S.E.C. v. Antar*, 120 F. Supp. 2d 431, 448 (D.N.J. 2000), *aff'd*, 44 F. App'x 548 (3d Cir. 2002); *Cap. Inv. Funding*, 2014 WL 5798121, at *2 (same). "To impose a constructive trust, [courts] must find both that a party committed a wrongful act and that, as a

---

[2] The Court acknowledges that some courts in this district, despite noting that a constructive trust is an equitable remedy, have seemingly allowed an independent claim for constructive trust to proceed where that claim is predicated on a separate, properly pled cause of action. *See, e.g., Van Horn*, 2021 WL 4317186, at *5–7.

5

result, the recipient was unjustly enriched." *John Hancock Life Ins. Co. (U.S.A.) v. Clemente*, No. 20-2772, 2021 WL 6932819, at *2 (3d Cir. 2021) (citing *Flanigan*, 175 N.J. at 608). Because the Court is dismissing Balanced's constructive trust claim on other grounds, the Court will not rule, at this time, on whether or not Balanced has satisfied the two requisite elements for imposition of a constructive trust.

### B. Piercing the Corporate Veil (Count Four)

Defendants contend that Balanced's claim for piercing the corporate veil must be dismissed because "Balanced fails to plead a sufficient claim under either of the required elements set forth by New Jersey Courts or the Third Circuit." (Defs. Mot. at 11). Specifically, they argue that Balanced "pleads, at best, a misuse of the corporate form" and does not show that a failure to pierce Mitnick Law's corporate veil would promote fraud or injustice. (*Id.* at 11–17).

"[V]eil piercing is an equitable tool that, in limited circumstances, allows courts to disregard corporate formalities." *Bell Container Corp. v. Palagonia Bakery Co. Inc.*, No. 19-6545, 2022 WL 2439532, at *5 (D.N.J. July 5, 2022) (citing *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001)). "Piercing the corporate veil is appropriate 'only under extraordinary circumstances.'" *Id.* (quoting *Portfolio Fin. Servicing Co. ex rel. Jacom Computer Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 627 (D.N.J. 2004)). "[T]he corporate veil may be pierced in instances where a corporate entity organized for lawful purposes perpetrates a fraud." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 680 (D.N.J. 2009). "The doctrine of piercing the corporate veil may also be applied when '[a]n individual ... was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests.'" *New Jersey Dep't of Env't Prot. v. Navillus Grp.*, No. A-4726-

6

13T3, 2015 WL 9700541, at *8 (N.J. Super. Ct. App. Div. Jan. 14, 2016) (*quoting Sean Wood, L.L.C. v. Haggerty Group, Inc.*, 422 N.J. Super. 500, 517 (App. Div. 2011))).

In New Jersey, piercing the corporate veil is appropriate only upon a showing of two elements. "'First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist. Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice.'"[3] *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (citing *Pappas Bus. Servs.*, 646 F. Supp. 2d at 679). As to the first element:

> [T]he Third Circuit has applied six non-binding factors to guide this inquiry: [1] gross undercapitalization ...; [2] the failure to observe corporate formalities, non-payment of dividends, [3] the insolvency of the debtor corporation at the time, [4] siphoning of funds of the corporation by the dominant stockholder, [5] non-functioning of other officers or directors, absence of corporate records, and [6] the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders.

*Id.* at 425 (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)). "These factors, however, 'are not a rigid test.'" *Twin Cap. Partners, LLC v. Wickstrom*, No. 20-02869, 2020 WL 6747026, at *4 (D.N.J. Nov. 17, 2020) (quoting *Marketvision/Gateway Research, Inc. v. Priority Pay Payroll, LLC*, No. 10-1537, 2011 WL 1640459, at *9 (D.N.J. May 2, 2011)). As to the second element, "a plaintiff need not prove common law fraud but instead demonstrate that the defendants, *via* the corporate form, perpetrated 'a fraud, injustice, or the like,' a less exacting standard." *Linus*, 376 F. Supp. 3d at 425 (citation omitted) (emphasis in original). "The party seeking to pierce the corporate veil bears the burden of showing that the

---

[3] "Although the case at bar deals with a limited liability company and not a corporation, the corporate veil applies with equal force in the LLC context." *Pappas Bus. Servs.*, 646 F. Supp. 2d at 679 n.5 (citing *Beuff Enterprises Florida, Inc. v. Villa Pizza, LLC*, No. 07-2159, 2008 WL 2565008, at *1 (D.N.J. June 25, 2008)); *United Cap. Funding Grp., LLC v. Brick City Brewing, LLC*, No. 21-3314, 2021 WL 5150197, at *3 (D.N.J. Nov. 4, 2021) ("The limited liability protection provided by an LLC may be abrogated under the doctrine of piercing the corporate veil, which applies 'in cases of fraud, injustice, or the like.'" (citation omitted)).

7

court should disregard the corporate entity." *Bell Container Corp.*, 2022 WL 2439532, at *5 (citing *Tung v. Briant Park Homes, Inc.*, 670 A.2d 1092, 1096 (N.J. App. Div. 1996)).

The Court begins with the first element, unity of interest and ownership. Plaintiff contends that it has sufficiently pled facts demonstrating the gross undercapitalization of Mitnick Law and the siphoning of assets from Mitnick Law by Craig Mitnick. (Pl. Opp'n Br. at 11). Plaintiff also alleges that "Mitnick Law and Craig Mitnick commingled assets" and used Mitnick Law's funds for personal expenses. (*Id.*) (citing Am. Compl. ¶¶ 66, 67).

The Court finds that Balanced has plausibly alleged a siphoning of corporate assets. *See, e.g.*, (Am. Compl. ¶¶ 31–33, 40, 71) ("Craig Mitnick ... transferred [Mitnick Law's] assets to himself, in his individual capacity, to insulate them from its creditors."). However, Plaintiff fails to allege that Mitnick Law was undercapitalized. Plaintiff's argument on this point in its briefing reveals a misunderstanding of "undercapitalization" as that term is understood in the veil piercing context. *See* (Pl. Opp'n Br. at 11) ("At the time the parties entered into the Master Agreement, Mitnick Law did not maintain adequate capital to conduct its business operations."). "[I]n order to demonstrate that an entity is undercapitalized, a plaintiff must sufficiently allege that it was inadequately capitalized '*at the time of its organization.*'" *Linus*, 376 F. Supp. 3d at 426 (quoting *Trs. of the Nat'l Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk*, 332 F.3d 188, 197 (3d Cir. 2003) (emphasis added). Plaintiff fails to so allege here.

As to the allegation of comingling of funds, Defendants argue that this is best understood as a claim that Mitnick Law failed follow corporate formalities. (Defs. Mot. at 13–14). Citing New Jersey's Revised Uniform Limited Liability Company Act ("RULLCA"), N.J. Stat. Ann. § 42:2C-1 *et seq.*, Defendants contend that a failure to adhere to corporate formalities, without more, is insufficient to support the piercing the corporate veil of an LLC in New Jersey. (*Id.*)

Defendants also argue that "an allegation of misuse or mismanagement of corporate funds that ultimately results in the inability of the LLC to operate is even insufficient to pierce the corporate veil." (Defs. Mot. at 14) (citing *Linus*, 376 F. Supp. 3d at 428). The Court is not persuaded.

New Jersey's RULLCA provides that "[t]he failure of a limited liability company to observe any particular formalities relating to the exercise of its powers or management of its activities is not a ground for imposing liability on the members or managers for the debts, obligations, or other liabilities of the company." N.J. Stat. Ann. § 42:2C-30(b). The Act "do[es] not categorically preclude piercing the veil of an LLC[.]" *Linus*, 376 F. Supp. 3d at 428. Rather, a failure to follow corporate formalities cannot be the *sole* justification for piercing the veil of an LLC. *See Coty US LLC v. 680 S. 17th Street LLC*, No. ESX-C-122-13, 2015 WL 1011664, at *15 (N.J. Super. Ch. Feb. 26, 2015) ("[The] Court finds that the equitable remedy of piercing the veil is applicable to a LLC, as long as it is not based solely on a LLC's failure to follow formalities."); *see also Linus*, 376 F. Supp. 3d at 428 ("Plaintiff's allegations with respect to the alleged misuse of funds do not rise to a level which demonstrates a failure to adhere to corporate formalities. Nevertheless, even if the disputed transfers warranted such a finding, this circumstance, alone, would not justify piercing the corporate veil—indeed, Plaintiff has failed to demonstrate any of the additional factors under the veil-piercing analysis."). Even presuming that Balanced's allegation of a comingling of funds should be construed as an allegation that Mitnick Law disregarded corporate formalities,[4] this is not Balanced's only allegation related to the unity of interest element. As noted above, Plaintiff has also adequately pled that Mr. Mitnick siphoned

---

[4] Notably, some courts appear to treat the comingling of assets as a distinct consideration when evaluating a veil piercing claim. *See Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, No. 18-15444, 2021 WL 62316, at *7–8 (D.N.J. Jan. 7, 2021) (analyzing allegations related to comingling of assets and failure to follow formalities separately); *see also Jacoby Donner, P.C. v. Aristone Realty Cap., LLC*, No. 17-2206, 2020 WL 5095499, at *14–15 (E.D. Pa. Aug. 28, 2020) (applying Pennsylvania law, which recognizes "intermingling of corporate and personal affairs" as a factor distinct from "failure to adhere to corporate formalities").

9

assets from Mitnick Law. *Cf. Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 17-00495, 2022 WL 1768853, at *2 (E.D. Pa. Mar. 21, 2022) (stressing that under the federal test for piercing the corporate veil, which is substantially similar to New Jersey's test, "[s]trong evidence supporting just one or two factors can establish alter ego liability"). And "[a]fter all, impermissible personal payments to an owner is 'the classic criteria for piercing the corporate veil.'" *RNC Sys., Inc. v. MTG Holdings, LLC*, No. 15-5239, 2017 WL 1135222, at *6 (D.N.J. Mar. 27, 2017) (quoting *Stochastic Decisions, Inc. v. DiDomenico*, 236 N.J. Super. 388, 395 (App. Div. 1989)).

Further, the Court does not agree that Plaintiff's allegations suggest only a misuse or mismanagement of funds, as was the case in *Linus*. *See* (Defs. Mot. at 13–14, 17). In *Linus*, the defendant LLC "transferred 'for little or no consideration' significant sums of money to its corporate parents and other related entities" in violation of its operating agreement, such that it "became undercapitalized" and could not effectuate the parties' contract. *Linus*, 376 F. Supp. 3d at 421–22. The court held that the transfers demonstrated a mere "misuse or mismanagement of corporate funds"—a situation that "frequently occur[s] within the corporate realm"—not abuse of the corporate form. *Id.* at 429 ("Importantly, the 'discretionary acts of an informally run LLC which ultimately resulted in [the] inability' to satisfy a financial obligation, is not within the contemplation of the veil-piercing framework, nor does it constitute the type of harm which the pertinent law was intended to redress.") (citation omitted). Here, unlike in *Linus*, Balanced has alleged that Craig Mitnick used Mitnick Law's funds to purchase furniture, alcohol, clothing, and property solely for Mr. Mitnick's personal use, (Am. Compl. ¶¶ 67–69)—actions that, if true, could plausibly show abuse of the corporate form by Defendants, *see Juul Labs, Inc. v. 4X Pods, Eonsmoke, LLC*, No. 18-15444, 2021 WL 62316, at *7 (D.N.J. Jan. 7, 2021) (finding the

10

plaintiff's allegation that "[the LLC] co-mingles funds with other of [the defendants'] business entities such that there is no distinction between the individuals and the company" helped satisfy the unity of interest element). Therefore, the Court finds that Balanced has met its burden as to the unity of interest element at this stage of the proceedings.

As to the second element, the Court finds that Balanced has pled the existence of fraudulent conduct in Count One of its Amended Complaint (Fraudulent Transfer, N.J. Stat. Ann. § 25:2-25). Balanced alleges that "[t]he transfer of Mitnick Law's ownership interest in the Property to Craig and Fern Mitnick was made with the actual intent to prevent, interfere, hinder, delay or defraud Plaintiff[,]" (Am. Compl. ¶ 46)—specifically that "Craig Mitnick ... transferred [Mitnick Law's] assets to himself, in his individual capacity, to insulate them from its creditors[,]" (*id.* ¶ 71). To support this contention, Balanced asserts that "Mitnick Law purchased the Property for over $300,000 and received a special warranty deed" but subsequently "conveyed the land to Craig and Fern Mitnick for a mere $25,000 by quitclaim deed," (*id.* ¶ 33), which Balanced contends demonstrates that "Mitnick Law did not receive reasonably equivalent value for their ownership interest in the Property upon transfer." (*Id.* ¶ 47). The Court finds that Balanced's allegations of fraudulent transfer, which Defendants do not challenge in their motion to dismiss, are sufficient to sustain the second veil-piercing element at this preliminary juncture. *See Antico v. RAM Payment, L.L.C.*, No. 20-12130, 2022 WL 971724, at *6 (D.N.J. Mar. 31, 2022) ("Plaintiff has adequately pled the existence of fraud or fraudulent conduct in Counts I (Violation of New Jersey Racketeer Influence and Corrupt Organizations Act, N.J.S.A. 2C:41-1, et seq.), and II (Violations of New Jersey Consumer Fraud Act, Act, N.J.S.A. 56:8-1, et seq.). These claims therefore further substantiate a finding that dismissal of Plaintiff's veil-piercing claim would be inappropriate at this stage of the litigation."); *see also Jurista v. Amerinox*

*Processing, Inc.*, 492 B.R. 707, 770 (D.N.J. 2013) ("Jurista has successfully pled the existence of fraud or fraudulent conduct in Counts 2, 3, 4, 9, 10 and 11. This therefore further substantiates a finding that dismissal of Plaintiff's veil-piercing claim would be inappropriate at this time").

This is not to say that piercing Mitnick Law's corporate veil is proper in this instance; Plaintiff has merely alleged sufficient facts to state a plausible basis for piercing the corporate veil at this early stage of the proceedings. Accordingly, Defendants' motion to dismiss Count Four of the Amended Complaint is denied without prejudice.

### C. Declaratory Judgment (Count Five)

Last, Defendants contend that Plaintiff is not entitled to a declaration that "(b) Plaintiff has superior and exclusive right to the Property; and (c) legal and equitable title in the Property is vested in Plaintiff" because these are remedies not permitted under New Jersey's Uniform Voidable Transactions Act ("UVTA"). (Defs. Mot. at 7) (citing Compl. ¶ 54). They argue that the remedies available under the UVTA "are sufficient to protect Balanced's interest" and that a separate cause of action for declaratory relief is "redundant." (*Id.* at 9–10). Defendants ask the Court to dismiss Plaintiff's declaratory judgment claim on these bases. (*Id.* at 7–11)

To start, as Balanced notes, the language cited in the instant motion to dismiss comes from Plaintiff's original Complaint, not its Amended Complaint—the operative complaint in this matter. *Compare* (Compl. ¶ 54) *with* (Am. Compl. at 12). In its Amended Complaint, Plaintiff seeks, in pertinent part, a declaration that: "(b) Plaintiff's rights to the Property are superior and exclusive relative to all but bona fide lenders for value; (c) subject only to the valid security interests of bona fide lenders for value, legal and equitable title in the Property is vested in Plaintiff ...." (Am. Compl. at 12). Defendants respond that, regardless of the specific language of the Amended Complaint, Balanced is still "seeking a declaration that it is the owner of the

12

property subject to the voidable transaction" which is "an extra-statutory remedy that is not available to Balanced under the UVTA." (Defs. Reply at 4).

The UVTA (formerly the Uniform Fraudulent Transfer Act or "UFTA")[5] "allow[s] the creditor to undo the wrongful transaction so as to bring the property within the ambit of collection." *Motorworld, Inc. v. Benkendorf*, 228 N.J. 311, 325 (2017) (citation omitted) (alteration in original). The statute provides:

> a. In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitations in R.S. 25:2-30, may obtain:
> (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;
> (2) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by Chapter 26 of Title 2A of the New Jersey Statutes and by Rule 4:60 et seq. of the Rules Governing the Courts of the State of New Jersey;
> (3) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure,
>    (a) An injunction against further disposition by the debtor or transferee, or both, of the asset transferred or of other property;
>    (b) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or
>    (c) Any other relief the circumstances may require.
> b. If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

N.J. Stat. Ann. § 25:2-29 (1989). The New Jersey Supreme Court has recognized that "[t]he remedies available to a successful claimant under the [UVTA] are broad." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161, 176 (2005).

As an initial matter, Plaintiff does not provide a legal basis for a declaration that Balanced has legal and equitable title to the Property and/or that Balanced has superior rights to the Property. "The [Declaratory Judgment] Act does not create substantive rights for parties; it merely provides another procedure whereby parties may obtain judicial relief." *Washington v.*

---

[5] The statute was renamed and amended, effective August 10, 2021. P.L. 2021, c. 92, § 10.

13

*Donley*, 802 F. Supp. 2d 539, 554 (D. Del. 2011) (quoting *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978).

To the extent Plaintiff seeks such a declaration as a substitute for money damages, the Court finds that this relief is unnecessary. "While Rule 57 of the Federal Rules of Civil Procedure states '[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate,' our Court of Appeals urges courts to exercise their discretion to decline proceeding with declaratory judgments when they duplicate other claims." *Butta v. GEICO Cas. Co.*, 400 F. Supp. 3d 225, 231 (E.D. Pa. 2019) (citations omitted) (alteration in original); *Watkins v. Bai Brands, LLC*, No. 17-2715, 2018 WL 999677, at *4 (D.N.J. Feb. 20, 2018) ("[C]ourts have routinely dismissed declaratory judgment claims that are merely redundant of a plaintiff's other claims."). At most, Balanced would be entitled to compensatory damages in the amount of Balanced's funds allegedly misappropriated by Defendants to purchase the Property.[6] Balanced is already seeking money damages with respect to their Fraudulent Transfer claim, (Am. Compl. at 8), which would allow them to recover any allegedly misappropriated funds, *see Chaleplis*, --- F. Supp. 3d. ----, 2022 WL 95691 at *12 n.3 ("As Plaintiffs already seek money damages pursuant to their remaining claims, a declaratory judgment entitling them to any funds used to purchase Defendants' homes would be 'redundant with claims already presented.'").

Additionally, Plaintiff's request for a declaration that the transfer of the Property is "null and void" is duplicative of Plaintiff's fraudulent transfer claim, and its request for a declaratory judgment that "Craig Mitnick, as the alter ego, is responsible to Plaintiff for all of Mitnick Law's liabilities to Plaintiff" is similarly duplicative of its claim to pierce the corporate veil. (Am.

---

[6] The Court does not comment on the availability of punitive damages and attorneys' fees.

14

Compl. at 12). Resolution of Plaintiff's claims for Fraudulent Transfer (Count One) and Piercing the Corporate Veil (Count Four) would necessarily dispose of these requests. Accordingly, the Court grants Defendant's motion to dismiss Plaintiff's declaratory judgment claim (Count Five).

## IV. CONCLUSION

For the reasons expressed above, Defendants' Motion to Dismiss (ECF No. 21) will be **GRANTED in part** and **DENIED in part**. An order shall issue.

Dated: 08/23/2022

ROBERT B. KUGLER
United States District Judge