## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| **BALANCED BRIDGE FUNDING, LLC,** | **Case No. 21–cv–20512–ESK–AMD** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **MITNICK LAW OFFICE, LLC,** *et al.*, | |
| **Defendants.** | |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on (1) plaintiff's motion for summary judgment (ECF No. 77 (Pl.'s Mot. Summ. J.)) on Count 1 of the amended complaint; (2) defendants' motion for summary judgment (ECF No. 78 (Defs.' Mot. Summ. J.)) on all counts; (3) plaintiff's cross-motion for summary judgment (ECF No. 89 (Pl.'s Cross Mot. Summ. J.)) on Count 4; and (4) plaintiff's motion for leave to file a sur-reply (ECF No. 92 (Pl.'s Mot. Sur-reply)).

For the following reasons, plaintiff's motion for summary judgment on Count 1 will be **DENIED**.   Defendants' motion for summary judgment on all counts will be **DENIED**.   Plaintiff's cross-motion for summary judgment on Count 4 will be **DENIED**.   Plaintiff's motion for leave to file a sur-reply will be **DENIED**.

## BACKGROUND

### I.   PROCEDURAL HISTORY

Plaintiff Balanced Bridge Funding, LLC (Balanced Bridge), filed its initial complaint on December 15, 2021. (ECF No. 1.)  On February 7, 2022, defendants Mitnick Law Office, LLC (Mitnick Law), Craig Mitnick, Fern

Mitnick, and Carol Mitnick filed a motion to dismiss two counts of the complaint. (ECF No. 16.) The next day, plaintiff filed a notice of dismissal (ECF No. 17) as to another defendant, Luxury Mortgage, which is no longer a party to this case.

While defendants' motion to dismiss was pending, plaintiff filed an amended complaint on February 9, 2022, that remains the operative complaint in this case. (ECF No. 18 (Am. Compl.).) Defendants' earlier motion to dismiss was denied as moot. (ECF No. 30.) In the amended complaint, plaintiff alleged five counts against defendants: (1) fraudulent transfer, (2) constructive trust, (3) civil conspiracy, (4) piercing the corporate veil, and (5) declaratory judgment. (Am. Compl. ¶¶ 41–76.)[1]

In response, defendants filed a motion to dismiss Counts 2, 4, and 5 of the amended complaint. (ECF No. 21.) In an Opinion and Order entered on August 23, 2022, the Court granted defendants' motion on Counts 2 and 5 but denied it on Count 4. (ECF Nos. 34, 35.) Accordingly, Counts 1, 3, and 4 of the amended complaint remain pending.

Defendants answered the amended complaint on September 6, 2022. (ECF No. 37.) The parties then engaged in months of discovery, (*see, e.g.*, ECF Nos. 41, 43, 47, 55, 58, 63, 66), and on December 20, 2023, participated in a Court-mediated settlement conference, which proved unsuccessful. (Minute entry after ECF No. 76.)

The parties then filed the present motions. On January 22, 2024, plaintiff filed its motion for summary judgment on Count 1 of the amended complaint. (Pl.'s Mot. Summ. J.) Defendants opposed the motion on March 4, 2024. (ECF No. 88 (Defs.' Opp'n Br.).) Plaintiff replied on March 11, 2024. (ECF No. 90 (Pl.'s Reply Br.).)

---

[1] Due to typographical errors, paragraphs 74, 75, and 76 in the amended complaint (Count 5) are labeled 1, 2, and 3.

Also on January 22, 2024, defendants filed their motion for summary judgment on all counts of the amended complaint (Defs.' Mot. Summ. J.), although they did not submit a corresponding brief until four days later.   (ECF No. 79 (Defs.' Mot. Summ. J. Br.).)   Plaintiff opposed the motion on March 4, 2024.   (ECF No. 87 (Pl.'s Opp'n Br.).)   Defendants replied on March 18, 2024. (ECF No. 91 (Defs.' Opp'n Cross Mot. Br.).)

On March 7, 2024, plaintiff filed its cross-motion for summary judgment on Count 4 of the amended complaint (Pl.'s Cross Mot. Summ. J.), although the brief in support of the cross-motion was included in plaintiff's earlier opposition to defendants' motion.   (Pl.'s Opp'n Br.)   Defendants opposed the cross-motion on March 18, 2024, in the same brief that served as a reply in support of their motion for summary judgment.   (Defs.' Opp'n Cross Mot. Br.)   Plaintiff then filed a motion for leave to file a sur-reply, (Pl.'s Mot. Sur-reply), through which plaintiff intended to provide further arguments regarding defendants' motion and its own cross-motion.   (*See* ECF No. 92–1 (Pl.'s Mot. Sur-reply Br.) p.1.) On April 22, 2024, defendants opposed plaintiff's motion for leave to file a sur-reply.   (ECF No. 93.)

This matter was reassigned to me on June 13, 2024.   (ECF No. 94.)

## II.   FACTS[2]

This case centers on the disputed transfer of a house in Margate, New Jersey.   Understanding that dispute, however, requires some background.

---

[2] In presenting the facts of the case, both parties failed to follow Local Civil Rule 56.1(a), which requires parties to submit a statement of material facts not in dispute that "shall be a separate document (not part of a brief)."   Likewise, responsive or supplemental statements of material facts are to be filed as separate documents.   *Id.* The purpose of the rule is to narrow the issues before the court and assist in identifying whether facts are disputed or not.   *See* Allyn Z. Lite, *New Jersey Federal Practice Rules*, cmt. 2(a) to L. Civ. R. 56.1 (2023 ed.).   The statements should "clarify the issues for the Court, not … increase the burden before it."   *Durkin v. Wabash Nat'l*, No. 10–02013, 2013 WL 1314744, at *6 (D.N.J. Mar. 28, 2013) (citation omitted).

Craig Mitnick is the sole member and manager of Mitnick Law, a New Jersey-based firm that represented numerous former National Football League (NFL) players in litigation seeking compensation for injuries they suffered due to concussions.  (Pl.'s Mot. Summ. J. Br. p.3 ¶2; Defs.' Mot. Summ. J. Br. p.7 ¶1.)[3]  Balanced Bridge, formerly known as Thrivest Specialty Funding, is a litigation funding company.  (*See* ECF No. 77–3 (Pl.'s Mot. Summ. J. Ex.) p.19.)  In June 2017, Mitnick Law signed an agreement in which it sold Balanced Bridge the legal fees it would collect from the NFL concussion litigation.  (Pl.'s Mot. Summ. J. Br. p.3 ¶2.)  In exchange, Balanced Bridge gave Mitnick Law millions of dollars in cash advances.  (*Id.*)  Beginning in 2018, however, Mitnick Law stopped making payments to Balanced Bridge.  (*Id.* p.3 ¶3; ECF No. 88–1 (Defs.' Counterstatement) p.1 ¶3.)  On May 6, 2020, Balanced Bridge initiated arbitration proceedings against Mitnick Law.  (Pl.'s Mot. Summ. J. Br. p.4 ¶5.)

The arbitrator ultimately found that Mitnick Law had underpaid Balanced Bridge in each year from 2018 to 2021.  In an interim award and opinion dated August 17, 2021, the arbitrator determined that Mitnick Law's

---

Unfortunately, both parties incorporated statements of material facts into their briefs.  (*See* ECF No. 77–1 (Pl.'s Mot. Summ. J. Br.) pp.3–6; Defs.' Mot. Summ. J. Br. pp.7–19; Pl.'s Opp'n Br. pp.10–20; Pl.'s Reply Br. pp.4–6.)  This has made it more difficult for me to compare where the parties disagree and, even more disappointingly, has apparently caused the parties to forget that the statements should not be used as vehicles for legal argument.  *See* L. Civ. R. 56.1(a) (the statements "shall not contain legal argument or conclusions of law.").

Despite misgivings, I am prioritizing judicial economy in culling through the parties' improperly drafted statements to adjudicate these motions.  However, I will strictly enforce Local Civil Rule 56.1 to the extent it arises again in this case and in all future cases.

[3] All citations to specific pages of court documents use the page numbers generated automatically by the ECF system.  Further, because the parties improperly incorporated their statements of material facts into their briefs, citations to those statements will refer to both page and paragraph numbers.

underpayments totaled $1,479,105.  (Pl.'s Mot. Summ. J. Ex. p.34.)  This amount included $753,987 in underpayments by the end of 2018, and another $454,062 by the end of 2019.  (*Id.*)  On September 1, 2021, the arbitrator then entered a final award of $2,307,119 plus fees in favor of Balanced Bridge—a sum reflecting a contractually agreed 19% interest charge for underpayments that was not included in the interim award.  (*Id.* pp.34, 35, 45; Defs.' Mot. Summ. J. Br. p.8 ¶4.)  On July 18, 2022, the United States District Court for the Eastern District of Pennsylvania confirmed the arbitration award and entered judgment against Mitnick Law.  (Pl.'s Mot. Summ. J. Br. p.5 ¶9; Defs.' Mot. Summ. J. Br. p.8 ¶7.)

Amid the dispute about payments under the litigation funding agreement, Mitnick Law on December 12, 2018, purchased a home in Margate, New Jersey, for $320,250.  (Pl.'s Mot. Summ. J. Br. p.5 ¶10.)  The following March, Mitnick Law took out a $260,000 loan with Delarosa Asset Management to fund renovations (Delarosa Mortgage).  (*Id.* p.5 ¶11.)  According to an "Affidavit of Business Purpose" made in connection with the loan, Craig Mitnick attested on behalf of Mitnick Law that "this is a business loan" and that "the [l]oan is being made primarily for business purposes."  (Pl.'s Mot. Summ. J. Ex. p.109.)  In his deposition several years later, Craig Mitnick testified that the home "was intended to be purchased and renovated to become [Craig Mitnick and his wife's] primary residen[ce] shortly after [thei]r children graduated college." (Pl.'s Mot. Summ. J. Ex. p.101; *see also* Defs.' Mot. Summ. J. Br. p.10 ¶¶16– 18.)  It was never intended for use as an office for Mitnick Law or as a rental property.  (Pl.'s Mot. Summ. J. Ex. p.101.)  Nevertheless, Craig Mitnick asserted that the affidavit of business purpose was accurate because "when your contractor is doing work at your home and you're paying them, that's a business transaction."  (*Id.*)

5

During the renovations, Mitnick Law retained ownership of the property. (Pl.'s Mot. Summ. J. Br. p. 5 ¶ 12; Defs.' Mot. Summ. J. Br. p. 9 ¶ 15.)[4] Craig Mitnick explained the rationale during his deposition:

> I had discussion[s] with several people and we were told hey, there – it's a fixer upper, there's no certificate of occupancy. You should put it in your business's name and once the renovations are complete, you get your mortgage and the property needs to be transferred to your wife and yourself prior to the mortgage taking place because you can't have it in another name. And that is what we did. Exactly followed the plan.

(Pl.'s Mot. Summ. J. Ex. p. 100.) Craig Mitnick testified that there were potential tax and liability benefits to sequencing the purchase this way. (*Id.*).

On August 16, 2019, Mitnick Law transferred the home via quitclaim deed to Craig Mitnick and his wife Fern Mitnick for $25,000. (*Id.* pp. 103–07.) The couple then borrowed money to pay off the Delarosa Mortgage and make other payments. (Defs.' Mot. Summ. J. Br. p. 10 ¶ 25, p. 15 ¶ 45, 47.)

In the weeks leading up to Mitnick Law purchasing the property, Craig Mitnick executed two corporate resolutions on behalf of Mitnick Law. (*Id.* pp. 10, 11 ¶ 26–28.) The first, dated November 27, 2018, refers to an earlier resolution empowering "the proper officers of the corporation"—*i.e.*, Craig Mitnick—"to purchase, lease, or otherwise acquire property and assets, including real property, as may be necessary for the proper conduct of the business of the corporation." (ECF No. 79–7 p. 2.) Given the prior authorization, the resolution continues, Mitnick Law "is authorized to

---

[4] In their statement of material facts in response to plaintiff's statement, defendants admit that Mitnick Law was the "legal title owner" of the property but deny that the firm was ever a "beneficial owner." (Defs.' Counterstatement p. 2 ¶ 10.) In their own statement of material facts in support of their motion for summary judgment, defendants assert that "[Mitnick Law] purchased the Property in trust for the benefit of Craig and [his wife] Fern." (Defs.' Mot. Summ. J. Br. p. 9 ¶ 14.) That a trust was created is a legal conclusion, and I do not accept it as an undisputed fact.

purchase, maintain, and hold [the Margate house] until such time as Craig R. Mitnick, personally secures a long-term mortgage." (*Id.*) The second resolution, dated the following day, authorizes Mitnick Law to serve as Craig Mitnick's agent in purchasing the Margate house and to hold the property in the firm's name "until such time as all necessary renovations are made to the property to allow the issuance of a Certificate of Occupancy by Margate City." (ECF No. 79–8 p. 2.) The resolution continues that the $320,000 paid by Mitnick Law to purchase the property will be treated as a "lump sum distribution" to Craig Mitnick, although the money could be sent directly to the seller. (*Id.*)

Balanced Bridge's amended complaint accuses Mitnick Law of fraudulently transferring the Margate house out of the firm's name for a mere $25,000 to shield the asset from Balanced Bridge, a creditor to whom Mitnick Law was behind on payments under the litigation funding agreement. (Am. Compl. ¶¶ 41–51.) The other pending counts—alleging that defendants engaged in a civil conspiracy (Count 2) and that the Court should pierce Mitnick Law's corporate veil to hold Craig Mitnick personally liable for alleged damages (Count 4)—also stem from the allegedly fraudulent transfer of the Margate house. Defendants deny the allegations.

## **LEGAL STANDARD**

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it will "affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a "reasonable jury could return a verdict for the nonmoving party." *Id.* The movant bears the burden of showing the absence of any "genuine issues of material fact." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (citations omitted). The party may satisfy

its burden by "produc[ing] evidence showing the absence of a genuine issue of material fact" or "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).   If the movant makes this showing, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).   Instead, the nonmovant must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995).

The Court's role is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial.   *Anderson*, 477 U.S. at 249.   In making that decision, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party," *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted), and credibility determinations are for the fact finder, *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## DISCUSSION

I will analyze the motions in the order they were filed, beginning with plaintiff's motion for summary judgment on Count 1 of the amended complaint. I will then turn to defendants' motion for summary judgment on all counts before concluding with plaintiff's cross-motion for summary judgment on Count 4.

## I.   PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT 1: FRAUDULENT TRANSFER

Plaintiff's motion for partial summary judgment suffers from a procedural flaw that prevents me from reaching its merits.   A plaintiff cannot amend its pleadings through summary judgment briefing.   *See Greene v. V. I. Water &*

*Power Auth.*, 557 F. App'x 189, 193 (3d Cir. 2014) ("[T]he arguments that [plaintiff] raised in opposition to [defendants'] motions for summary judgment cannot serve as an independent basis for amendment of the pleadings.") (citations omitted); *Torske v. DVA Health & Nutrition GmbH*, No. 11–03609, 2013 WL 1848120, at *5 (D.N.J. Apr. 30, 2013) ("[I]t is axiomatic that a plaintiff may not amend his complaint through later briefing.") (citation omitted); *TekDoc Servs., LLC v. 3i-Infotech Inc.*, No. 09–06573, 2013 WL 2182565, at *18 (D.N.J. May 20, 2013) (rejecting plaintiffs' attempt to amend pleadings through summary judgment briefing).   Rather, at such a late stage in litigation but before trial, "a party may amend its pleading only with the opposing party's written consent or the court's leave."   Fed. R. Civ. P. 15(a)(2).

Here, plaintiff premises its motion for summary judgment on Count 1 on a different code section than the one specifically referenced in its amended complaint.   In its motion, plaintiff argues it is entitled to summary judgment under Section 25:2–27(a) of the New Jersey Uniform Voidable Transactions Act. (Pl.'s Mot. Summ. J. Br. pp. 6, 7.)[5]   Section 25:2–27(a) defines transfers that are "constructively fraudulent."   *See Motorworld, Inc. v. Benkendorf*, 156 A.3d 1061, 1064 (N.J. 2017).   In its amended complaint, however, plaintiff alleges an actual fraudulent transfer pursuant to N.J. Stat. Ann. § 25:2–25.   (Am. Compl. ¶¶ 41–51); *see also Motorworld*, 156 A.3d at 1067 (stating that Section 25:2–25(a) defines "actual fraudulent" transfers).   Confusingly, plaintiff in its reply brief and in its opposition to defendants' motion returns to its theory of actual fraud.   (*See* Pl.'s Reply Br. p. 8, 9; Pl.'s Opp'n Br. pp. 9, 30, 31.)   This, however, is not enough to salvage its motion.[6]

---

[5] The Act, codified at N.J. Stat. Ann. § 25:2–20 *et seq.*, was formerly known as the Uniform Fraudulent Transfer Act.   *See* N.J. Stat. Ann. § 25:2–20.

[6] There is a circuit split as to whether Federal Rule of Civil Procedure 15(b), which is captioned "Amendments During and After Trial," may apply at the summary judgment stage.   *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318,

Because plaintiff advances a different cause of action in its motion for summary judgment than that alleged in its amended complaint, and plaintiff did not seek to amend its pleadings through the procedures specified in Rule 15, I decline to consider plaintiff's new legal theory for the first time at summary judgment.   Accordingly, plaintiff's motion for summary judgment on Count 1 of the amended complaint is denied.

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

As a preliminary matter, I deny plaintiff's motion for leave to file a sur-reply and I will not consider arguments made in that filing.   Plaintiff's proposed sur-reply seeks to present further arguments regarding defendants' motion and its own cross-motion.   (*See* Pl.'s Mot. Sur-reply Br. p.1 (referencing Defs.' Mot. Summ. J. and Pl.'s Opp'n Br.).)   Plaintiff is not entitled as of right to provide additional briefing on either motion.   *See* L. Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge to whom the case is assigned."); *id*. 7.1(h) ("No reply brief in support of the cross-motion shall be served and filed without leave of the assigned Judge.").   Courts have permitted

---

327 n.7 (3d Cir. 2012).   The Third Circuit has not yet ruled on the issue.   *See Atain Specialty Ins. Co. v. Ne. Mountain Guiding LLC*, No. 16–05129, 2021 WL 2660302, at *4 (D.N.J. June 29, 2021).   Regardless, plaintiff could not take advantage of that rule here.   Rule 15(b)(2) states that "[w]hen an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings."   Defendants, however, object in their opposition to plaintiff's motion that the issue of Mitnick Law's insolvency, which must be shown under Section 25:2–27(a) but not necessarily under Section 25:2–25(a), was not pleaded in the amended complaint.   (Defs.' Opp'n Br. pp.17, 18.)   As a related matter, they also argue that plaintiff has not presented sufficient evidence comparing Mitnick Law's debts to its assets, which information is needed to assess insolvency under N.J. Stat. Ann. §25:2–23(a).   (*Id*. pp.18–21.)   I find, therefore, that defendants have not given express or implied consent to adjudication of this issue.   *See Atain Specialty Ins. Co.*, 2021 WL 2660302, at *4 (the proper inquiry under Rule 15(b)(2) is "whether the plaintiff introduced evidence relevant to its claims without objection from [d]efendant.") (internal punctuation and citation omitted).   I will not treat this issue as if it were raised in the pleadings pursuant to Rule 15(b)(2).

sur-replies "to address a new issue in the interest of completeness, for complicated and novel legal questions, or for unusual circumstances." *Levey v. Brownstone Inv. Grp., LLC*, No. 11–00395, 2013 WL 3285057, at *3 (D.N.J. June 26, 2013) (internal quotation marks and citations omitted), *aff'd*, 590 F. App'x 132 (3d Cir. 2014).   Ultimately, permission for leave to file a sur-reply is a matter "committed to the District Court's sound discretion." *Levey*, 590 F. App'x at 137 (citations omitted).

Plaintiff has not made a sufficient showing that a sur-reply is merited.   In its proposed sur-reply, plaintiff largely rehashes arguments it made in prior briefs.   (*See, e.g.*, ECF No. 92–2 pp. 3–8 (sections I, II, III, IV, and VI).) Otherwise, plaintiff seeks to respond to a two-page affidavit from Mitnick Law's accountant that defendants introduced through their opposition to plaintiff's cross-motion.   (*Id.* pp. 6, 7 (citing ECF No. 91–4 pp. 2, 3).)   I am capable of assessing this affidavit and the other arguments raised in the summary judgment motions without the benefit of plaintiff's proposed sur-reply.   In my discretion, therefore, I deny plaintiff's motion for leave to file a sur-reply.   (Pl.'s Mot. Sur-reply.)[7]

## A.   Count 1: Fraudulent Transfer

Defendants argue that they are entitled to summary judgment on Count 1 of the amended complaint, which alleges an actual fraudulent transfer pursuant to N.J. Stat. Ann. §25:2–25.   That code section provides:

> a. A transfer made or obligation incurred by a debtor is voidable as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was

---

[7] As a separate matter, plaintiff argues in its opposition to defendants' motion that I should dismiss the motion as untimely because defendants filed their brief in support of the motion four days after a Court-imposed deadline to file dispositive motions.   (*See* Pl.'s Opp'n Br. p. 8 n. 1.)   I decline to deny the motion on this basis because defendants' violation was *de minimis* and the motion should be decided on the merits.

incurred, if the debtor made the transfer or incurred the obligation:

> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
>> (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> (b) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

> b. A creditor making a claim for relief under subsection a. of this section has the burden of proving the elements of the claim for relief by a preponderance of the evidence.

N.J. Stat. Ann. §25:2–25.

Defendants advance two arguments in an attempt to prevail on their motion.   First, they argue that because the corporate resolutions executed by Craig Mitnick obligated Mitnick Law to transfer the property upon a triggering event, the firm "cannot be determined to have acted with fraudulent intent" under Section 25:2–25(a)(1). (Defs.' Mot. Summ. J. Br. p.21.) Second, defendants contend that during the nine months that Mitnick Law held title to the Margate house, the firm did so as a trustee for the benefit of Craig Mitnick. (*Id*. pp.20, 21.)[8]   As a result, they argue, Mitnick Law held only "bare legal

---

[8] Defendants argue at length that Mitnick Law held the property for the benefit of Craig Mitnick pursuant to an express trust created by the corporate resolutions, or in the alternative, pursuant to a purchase money resulting trust arising from how the original home purchase was structured. (Defs.' Mot. Summ. J. Br. pp.21–25.) Plaintiff, in turn, argues that defendants failed to satisfy the requirements of trust formation under New Jersey law.   (Pl.'s Opp'n Br. pp.24–28.)   I need not resolve this dispute because, as explained below, I find on other grounds that summary judgment is not appropriate.

title" to the property.   (*Id.* p. 21.)   Because such title is valueless, any value that Mitnick Law received for the property—in this case, $25,000 from Craig and Fern Mitnick—must have been a "reasonably equivalent" exchange of value under Section 25:2–25(a)(2).

Neither of defendants' arguments is a winning one.   Even assuming for the sake of this Opinion that Mitnick Law held title to the property in trust for Craig and Fern Mitnick, this does not entitle defendants to summary judgment. To prevail under Section 25:2–25(a)(1), plaintiff needs only to prove that defendants transferred the house "[w]ith actual intent to hinder, delay, or defraud" plaintiff. [9]   Whether a trust existed and whether Mitnick Law received reasonably equivalent value are not elements.   The relevant question is defendants' intent in making the transfer.   For example, if a trust was created, but it was done so fraudulently, plaintiff could still prevail on Count 1.

The issue for me to decide, then, is whether a genuine factual dispute exists as to defendants' intent in transferring the Margate property.   *See* Fed. R. Civ. P. 56(a).   The answer, clearly, is yes.   In reaching this conclusion, I am cognizant that I must construe all facts and inferences in the light most favorable to plaintiff as the non-movant.   *Boyle*, 139 F.3d at 393.   Further, as the Third Circuit has long cautioned, "[t]he issue of intent is particularly inappropriate for resolution by summary judgment because evaluating state of mind often requires the drawing of inferences from the conduct of parties about which reasonable persons might differ."   *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 524 (3d Cir. 2004), *as amended* (Aug. 12, 2004) (internal quotation marks and citation omitted); *see also Louis Schlesinger Co. v. Kresge Found.*, 388 F.2d 208, 212 (3d Cir. 1968) ("Summary judgment is not an appropriate

---

[9] Defendants concede that plaintiff was a creditor of Mitnick Law at the time of the transfer.   (Defs.' Opp'n Br. p. 6 n. 1.)

instrumentality to determine factual intention and inferences.") (citation omitted).

Plaintiff succeeds in creating a genuine factual dispute as to defendants' intent in transferring the property. Defendants maintain that Mitnick Law could not have acted with fraudulent intent because, under the terms of the corporate resolutions, it did not have discretion to refuse to transfer the property. (Defs.' Mot. Summ. J. Br. p. 28.) Plaintiff, however, cites to several parts of the record that, construed in the light most favorable to plaintiff, could be indicative of defendant's fraudulent intent. For example, plaintiff points out that Mitnick Law purchased the Margate house, which Craig Mitnick testified was never intended to be used as an office or rental property, despite the firm being authorized by its corporate resolutions to purchase property only "as may be necessary for the proper conduct of the business of the corporation" (Pl.'s Opp'n Br. pp. 24, 25); that Mitnick Law transferred for $25,000 a house to which it acquired title for $320,250 (*id*. p. 31); and that all this happened even though, as an arbitrator later concluded, Mitnick Law had underpaid plaintiff $753,987 in 2018 and $454,062 in 2019 (*id*. p. 23). This record evidence is sufficient to create a genuine dispute as to the material fact of defendants' intent in transferring the property (and purportedly creating a trust). *See* Fed. R. Civ. P. 56(a).

Defendants separately argue that Carol Mitnick, Craig Mitnick's mother, is entitled to summary judgment. (Defs.' Mot. Summ. J. Br. pp. 30, 31.) The parties agree that Carol Mitnick is named in Count 1 only because she holds a mortgage on the Margate property, not because she allegedly engaged in a fraudulent transfer. (*Id*.; Pl.'s Opp'n Br. pp. 32, 33.) As plaintiff correctly points out, however, because it is seeking to void the allegedly fraudulent transfer *and* any subsequent encumbrances of the property (*see* Am. Compl. ¶ 4), Carol Mitnick must remain in the case. *See Hoheb v. Muriel*, 753 F.2d 24,

14

26–27 (3d Cir. 1985) (holding that absent mortgagees must be joined in an action seeking rescission of a real estate transaction); *Hayrioglu v. Granite Cap. Funding, LLC*, 794 F. Supp. 2d 405, 416 (E.D.N.Y. 2011) (in an action seeking rescission of a mortgage, the mortgagee must remain in the action as a "necessary party" even after all the claims against it have been dismissed); *Nelson v. Acre Mortg. & Fin., Inc.*, No. 17–01050, 2022 WL 4536407, at *2 (M.D. Pa. Sept. 28, 2022) (rescission not available as a remedy when the mortgagee was not a party to the action).

Accordingly, none of the defendants is entitled to summary judgment on Count 1.   I deny their motion for summary judgment on this count.[10]

### B.   Count 3: Civil Conspiracy

Defendants argue in a cursory fashion that because they are entitled to summary judgment on Counts 1 and 4 of the amended complaint, I must also grant summary judgment on the civil conspiracy claim in Count 3 "since there is no underlying action to support such a claim."   (Defs.' Mot. Summ. J. Br. p. 40.)   As discussed, however, defendants are not entitled to summary judgment on Count 1.   Nor, as I explain below, are they entitled to summary judgment on Count 4.   Accordingly, I deny their motion as to Count 3.

### C.   Count 4: Piercing the Corporate Veil

Defendants additionally argue that they are entitled to summary judgment on Count 4 of the amended complaint, which asks the Court to pierce Mitnick Law's corporate veil and hold Craig Mitnick personally liable for the alleged damages to plaintiff.   (Am. Compl. ¶¶ 62–73.)

---

[10] Because I find that a reasonable jury could return a verdict in favor of plaintiff under N.J. Stat. Ann. §25:2–25(a)(1), that is enough to deny summary judgment on Count 1, and I need not discuss whether plaintiff could likewise prevail under *id.* §25:2–25(a)(2).

The Court recites the legal standard for piercing the corporate veil that it set forth in an earlier Opinion in this case on August 23, 2022.   (ECF No. 34.) "[V]eil piercing is an equitable tool that, in limited circumstances, allows courts to disregard corporate formalities." *Bell Container Corp. v. Palagonia Bakery Co. Inc.*, No. 19–06545, 2022 WL 2439532, at *5 (D.N.J. July 5, 2022) (citation omitted). [11]   "Piercing the corporate veil is appropriate 'only under extraordinary circumstances.'" *Id.* (quoting *Portfolio Fin. Servicing Co. ex rel. Jacom Comput. Servs. v. Sharemax.com, Inc.*, 334 F. Supp. 2d 620, 627 (D.N.J. 2004)).   "[T]he corporate veil may be pierced in instances where a corporate entity organized for lawful purposes perpetrates a fraud." *State Cap. Title & Abstract Co.*, 646 F. Supp. 2d at 680 (citation omitted).   It may also be pierced when "[a]n individual … was using the corporation as his alter ego and abusing the corporate form in order to advance his personal interests." *Sean Wood, L.L.C. v. Haggerty Grp., Inc.*, 29 A.3d 1066, 1076 (N.J. Super. Ct. App. Div. 2011) (citation omitted).

In New Jersey, piercing the corporate veil is appropriate only upon a showing of two elements.   "First, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist.   Second, the circumstances must indicate that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Linus Holding Corp. v. Mark Line Indus., LLC*, 376 F. Supp. 3d 417, 425 (D.N.J. 2019) (citation omitted).   As to the first element:

---

[11] "Although the case at bar deals with a limited liability company and not a corporation, the corporate veil applies with equal force in the LLC context." *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 679 n.5 (D.N.J. 2009) (citation omitted); *see also United Cap. Funding Grp., LLC v. Brick City Brewing, LLC*, No. 21–03314, 2021 WL 5150197, at *3 (D.N.J. Nov. 4, 2021) ("[T]he limited liability protection provided by an LLC may be abrogated under the doctrine of piercing the corporate veil.") (citation omitted).

> [T]he Third Circuit has applied six non-binding factors to
> guide this inquiry: [1] gross undercapitalization … ; [2] the
> failure to observe corporate formalities, non-payment of
> dividends, [3] the insolvency of the debtor corporation at
> the time, [4] siphoning of funds of the corporation by the
> dominant stockholder, [5] non-functioning of other officers
> or directors, absence of corporate records, and [6] the fact
> that the corporation is merely a facade for the operations
> of the dominant stockholder or stockholders.

*Id.* (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 150 (3d Cir. 1988)).   "These factors, however, 'are not a rigid test.'"   *Twin Cap. Partners, LLC v. Wickstrom*, No. 20–02869, 2020 WL 6747026, at *4 (D.N.J. Nov. 17, 2020) (quoting *Marketvision/Gateway Rsch., Inc. v. Priority Pay Payroll, LLC*, No. 10–01537, 2011 WL 1640459, at *9 (D.N.J. May 2, 2011)).   As to the second element, "a plaintiff need not prove common law fraud but instead demonstrate that the defendants, *via* the corporate form, perpetrated a fraud, injustice, or the like, a less exacting standard."   *Linus*, 376 F. Supp. 3d at 425 (internal quotation marks and citation omitted).   "The party seeking to pierce the corporate veil bears the burden of showing that the court should disregard the corporate entity."   *Bell Container Corp.*, 2022 WL 2439532, at *5 (citation omitted).

Much like the issue of intent, the question of whether to pierce the corporate veil is typically inappropriate for resolution at summary judgment. *See N.J. Dep't of Env't Prot. v. Gloucester Env't Mgmt. Servs., Inc.*, 800 F. Supp. 1210, 1220 (D.N.J. 1992) ("[The] consideration of whether to pierce the corporate veil involves complex issues of law and fact which are not readily amenable to summary judgment."); *see also The Mall at IV Grp. Props., LLC v. Roberts*, No. 02–04692, 2005 WL 3338369, at *10 (D.N.J. Dec. 8, 2005) ("[I]t is recognized that the determination of whether there are sufficient grounds for piercing the corporate veil ordinarily should not be disposed of by summary judgment, in view of the complex economic questions often involved, especially

if fraud is alleged.") (quoting 1 William Meade Fletcher *et al.*, *Fletcher Cyclopedia of the Law of Corporations* § 41.95).

Summary judgment is not appropriate on plaintiff's veil piercing claim because the parties cite to evidence that creates a genuine dispute as to several material facts.  *See* Fed. R. Civ. P. 56(a).  The parties, for instance, argue at length over which of the six non-binding factors that guide a court's analysis of the first element of a veil piercing claim cut in their respective favor. Defendants cite evidence—primarily the testimony of Craig Mitnick—that they argue shows that Mitnick Law was not undercapitalized at the time it was organized (Defs.' Mot. Summ. J. Br. p. 33); that the firm observed corporate formalities through accounting, governance, and other business practices (*id.* pp. 33, 34); that Craig Mitnick never siphoned funds from the firm (*id.* p. 35); that Craig Mitnick, as the sole member and manager of Mitnick Law, was an active and functioning officer of the LLC (*id.*); and that the firm, which performed a legitimate business function and entered a contract with plaintiff, was far from a façade for the operations of Craig Mitnick personally (*id.* pp. 35, 37).  Plaintiff counters by citing evidence that it argues shows that Mitnick Law was insolvent at the time of the allegedly fraudulent transfer (Pl.'s Opp'n Br. p. 35); that Craig Mitnick siphoned the firm's funds for personal and family expenses and, most significantly, to purchase the Margate house (*id.* pp. 36, 37); and that by routinely commingling the firm's funds with his own, Craig Mitnick did use the firm as a façade for his personal operations (*id.* p. 36).

Plaintiff's evidence on the first element of its veil piercing claim is more than enough to create a genuine dispute of material fact.  *See Eddystone Rail Co., LLC v. Bridger Logistics, LLC*, No. 17–00495, 2022 WL 1768853, at *2 (E.D. Pa. Mar. 21, 2022) (stressing that under the federal test for piercing the corporate veil, which is substantially similar to New Jersey's test, "[s]trong evidence supporting just one or two factors can establish alter ego liability");

*RNC Sys., Inc. v. MTG Holdings, LLC*, No. 15–05239, 2017 WL 1135222, at \*6 (D.N.J. Mar. 27, 2017) ("[I]mpermissible personal payments to an owner is the classic criteria for piercing the corporate veil.") (internal quotation marks and citation omitted).   What is more, the factual dispute is a knotty one which hinges in large part on the weight to be assigned to the testimony of Craig Mitnick.   These questions can only be resolved by a jury, not by a judge deciding a summary judgment motion.   *See Anderson*, 477 U.S. at 249 (a court's role at summary judgment is not to weigh the evidence and decide the truth, but to determine if there is a genuine issue for trial); *Big Apple BMW, Inc.*, 974 F.2d at 1363 (credibility determinations are for the fact finder).

As to the second element of the veil piercing claim, I have already decided that defendants are not entitled to summary judgment on plaintiff's fraudulent transfer claim.   By definition, then, I have determined that plaintiff may be able to "demonstrate that the defendants, *via* the corporate form, perpetrated a fraud, injustice, or the like."   *See Linus*, 376 F. Supp. 3d at 425.   I denied summary judgment on the fraudulent transfer claim due to a genuine dispute as to the material fact of defendants' intent in transferring the property.   It follows that a genuine dispute of material fact likewise exists as to the second element of plaintiff's veil piercing claim.

Accordingly, defendants are not entitled to summary judgment on Count 4, and their motion on that count is denied.

## III.   PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT 4: PIERCING THE CORPORATE VEIL

In response to defendants' motion, plaintiff filed a cross-motion for summary judgment on Count 4.   (Pl.'s Opp'n Br. pp. 33–37.)   For substantially the same reasons that summary judgment on Count 4 is not appropriate in favor of defendants, it is likewise not appropriate in favor of plaintiff.   As discussed, the parties cite to evidence that creates a genuine dispute of material

fact as to both elements of the veil piercing claim.   The facts of this case are a prime example of why the question of whether to pierce the corporate veil is typically inappropriate for resolution at summary judgment.   *See Gloucester Env't Mgmt. Servs., Inc.*, 800 F. Supp. at 1220.   I deny plaintiff's cross-motion for summary judgment on Count 4.

**CONCLUSION**

For the reasons stated above, plaintiff's motion for summary judgment (ECF No. 77) on Count 1 of the amended complaint is **DENIED**.   Defendants' motion for summary judgment (ECF No. 78) on all counts is **DENIED**. Plaintiff's cross-motion for summary judgment (ECF No. 89) on Count 4 is **DENIED**.   Plaintiff's motion for leave to file a sur-reply (ECF No. 92) is **DENIED**.   An appropriate Order accompanies this Opinion.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: August 27, 2024